CaeuthbRs, J.
delivered the opinion of the Court.
This is a contested road case. The plaintiffs are petitioners for a county road, to pass over the lands of the defendant, in Robertson’s Bend, on Cumberland river, about six miles from Nashville. The petitioners live in White’s Bend, on the opposite side of the river from Robertson’s Bend, and propose to establish a ferry, by which to pass over to the bank of defendant, and then over his land in the direction of Nashville, about the distance of -.
The defendant has the whole bend enclosed and arranged for stock-raising at considerable expense, and resists the application to run a public road through it, because it would inflict irreparable injury upon him, without any corresponding advantage to the public. Much proof was introduced to support the positions assumed on both sides — the public demand for the road on the one part, and the private injury on the other.
The County Court decided in favor of the petitioners, and ordered the laying out and establishment of the road; but upon an appeal to the Circuit Court. that judgment.was reversed and the petition dismissed, and an appeal to this Court. It is now for us to decide upon the evidence presented in the bill of exceptions, which tribunal gave the proper judgment.
It is assigned for error here, first, that the Circuit Judge refused to refer the question to a jury, instead of passing upon the evidence himself. We think he did not err in this. Such a practice has never been adopted, and it is not contemplated by any act of Assembly on the subject of roads. It is not a proper *11 matter for a jury. The jurisdiction is given, exclusively, to the County Court in the first instance, and then, upon appeal to the Circuit Court, to the judge. These contests are often of the most exciting character. They generally array many against one, and arouse -whole communities against a single individual. It would he unsafe, in such cases, to leave them to a jury of the vicinage. At all events it would he more safe and appropriate to intrust them to an impartial, unexcited -Court. But it is enough that the Legislature has confided all such questions to the Courts, without any provisions for a jury.- It would he an evasion of duty for a Judge to shift this labor and- responsibility from himself to a jury, and, probably, it would be held erroneous to do so.
The public is entitled to all necessary roads and thoroughfares, and it is the duty of the Courts to grant them, wherever they are needed, although they may he injurious to individuals, upon making compensation for the injury, as provided by law. This is to be done, however, with as little injury to private property as practicable. It does not follow that a road is to be granted because a portion of the people may desire it; not even in every case where it is manifest that it would be of some convenience or advantage to them. The advantage to the public must be sufficiently great to overbalance the private injury. That is, in a case where the necessity is not imperative, very serious harm will not be done to individuals by the establishment of a public road. In the exercise of this very delicate and important jurisdiction, by which private property is taken lor public use, the Courts should look, carefully, to the *12 interests of all the citizens, and never exercise the right of eminent domain unless it is clearly and urgently demanded for the public good. That a few miles in distance would be saved, or a road some degrees better provided for a portion of the community, is not a sufficient reason, in all cases, to justify the running a road over private property. The Courts should wisely and fairly judge of each case upon the facts presented. On the one hand the public prosperity and convenience should not be retarded because individual interests might be in the way; and, on the other, private rights ought not to be infringed without manifest necessity. This would not only be unjust to those who would be immediately affected by it, but to the whole community, who would have to be taxed to pay the damages that might be assessed for the appropriation of private property to public use. This must necessarily be done, because the constitution, as well as the acts of Assembly, require it. So a good many considerations are involved in the question.
Both parties have used every exertion to present all the facts in this case calculated to assist the Courts in arriving at a correct conclusion. We have a map of the two bends, the river, adjacent turnpikes, and other public roads and ferries. The situation of all the families in “White’s Bend,” together with the opinions of men as to the necessity of the proposed road for each inhabitant. From all which it appears that a few of the families would be benefitted by shortening the distance to Nashville, provided they succeeded in getting a good ferry kept up. But taking all the circumstances into view, as they are presented in the proof, we are *13 satisfied that a majority of the people in this bend would not only receive no advantage by opening the road, but that it would not be used by them if opened on the opposite side of the river. The proximity of two good turnpike roads — the one leading from Charlotte to Nashville, and the other to Hyde’s 3 Ferry without much increase of distance, would prevent very much use of the contemplated road, even if it were opened and a ferry kept up. The character of the ground near the river in Robertson’s Bend would make it a bad road in the winter and spring seasons, and some of the witnesses say almost impassable — entirely so, without throwing up an embankment for three or four hundred yards from the river, to an elevation of three or four feet, and building a bridge over a slough or ravine.
Some of the witnesses are of opinion that the road would be of vital importance to the families in White’s Bend ” — at least tor some of them — and others think it would be of very little or no benefit to them. Some say that the ferry to be established upon the new road, at the head of Robertson’s Island, would be safe and convenient, and others, that it would be exceedingly dangerous, and, in high water, almost impassable. So we are left, as in most cases of this kind, to judge between them upon the reasons they assign and the facts they state. The proof shows that there are from twenty to forty families in the bend — some of them renters; that most of them, by proper roads leading to the turnpikes on either side, could reach Nashville more easily and safely than by the proposed road, though the distance might be somewhat greater to a majority of them. ■ It is clear that the general public have no *14 interest in the question, but that it would he confined to the small community in the bend. We are not satisfied from the proof that the benefit to them would be sufficient to authorize the injury to private property that would result. The County Court, in 1850, discontinued a county road through Robertson’s Bend, upon the report of a jury of view, and we can see no sufficient reason for opening it again at present.
We concur with the Circuit Judge in his conclusion upon the facts, and affirm his judgment disallowing the petition.